Waties, J.
being nearly connected with Mr. Glover, one of the plaintiffs in the action, declined giving an opinion.
Burke, J,
mentioned, that in his opinion there were such Strong circumstances of insanity about the testator, and had been for some time before this will was signed, that it made it extremely questionable in his mind, whether it merited the sanction of a court and jury or not. That it was difficult to conceive why a man in his perfect senses, who possessed so high a regard and esteem for another as the testator seems to have had for Major Hazard, should, in so short a time, without any difference or quarrel, or any ma - *349 terial change of circumstances, alter his mind so much as to have totally forgotten his old friend and relation. He thought there was no other way to account for it but by insanity, or a want of sufficient energy in the mind of the testator, to resist the effects of influence, in a weak, debilitated state, both of mind and body. But as this depended on matters of fact very proper for the consideration of the jury, he left it with them to determine as they in their consciences thought proper.
Powell on Devises, 69, 70.
Ibid. 71.
Ibid. 69. 3 Will. 95.
Rutledge, Ch. J. Grimice, J. and Bay, J.
were of one opinion on this occasion, and delivered their opinions seria-tim to the jury. They were to the following effect, viz. That the statute of frauds, which was the pattern for wills for lands, at this day, required “ that all devises of lands M should be in writing, signed by the party himself, (or 54 some other, by his directions,) and attested and subscribed a by three or four credible witnesses at least, in the testa-‘x tor’s presence, otherwise to be null and void.” It is evident, therefore, that by this act there are four essential requisites: First, the will should be in writing; for no parol devise will convey lands, as it will goods and chattels. Secondly, it should be subscribed by the party, (or some other, by his direction.) If a man cannot write, or is disabled, another may sign it for him, by his direction. The third requisite is the attestation. The true construction of law under this head, had always been, that the act called the attention of the witnesses to the situation of the testator himself ; and this particularly relates to his sanity. The wxtnesses are not called upon by the act to attest the mere factum of signing, but the capacity of the testator. The business, then, of the persons required by the statute to be present at executing a will, is not barely to attest the corporal act of signing, but to iry, judge, and determine, whe ther the testator is compos to sign ; that is, of a sound as every will, upon the face of it, imports. And uPon every controversy, the heir at law, or other persr*lnteresi> ed, has a right to a proof of sanity from ever on" Bl ^iero *350 whom the statute has placed around the testator. There is no other security but the witnesses, and their integrity. The acknowledgment of the hand and seal of the testator is sufficient, without saying it is his last will and testament, as no particular form of publication is prescribed by the act. The fourth and last requisite is the subscription of the signatures 5 and this must be by all the witnesses, in the presence of the testator, or within view of the testator, where he might see if he pleased, as going into a gallery or adjoining room with the door open, or the like. Notwithstanding all these guards, however, this evidence is not uncontrollable when insanity is alleged ; and it is upon this ground the courts of law have permitted the heir at law (or other person, who is materially to be affected by the will) to examine other witnesses, against the attestation of the subscribing witnesses, upon the point of insanity. All the witnesses examined for the defendant were evidently intended to establish that point, against the testimony of the three witnesses to the will; and it is for the jury, ultimately, to determine on which side the weight of evidence lies. They have proved, beyond all contradiction, as, indeed, the witnesses for the plaintiffs have also done, that the testator was subject to fits of insanity, by hard drinking, some time before his death. But, on the other hand again, they all prove, also, that after these fits were over he returned again to his senses, and was perfectly in his reason. Upon this point the law is clear, that in cases of insanity, brought on by the visitation of God, or by acts of indiscretion, as drunkenness, &c. if the party has what the law calls lucid intervals, that is a proper return of his rational faculties, he may make a will. As, therefore, almost all the witnesses, on both sides, prove that he was occasionally deranged, it will be for the jury to determine whether this latter will was xecuted at a time when he had one of these lucid intervals or St. Upon the whole, however, it appears that the weighi^f tes|;imony js greatly in favour of the plaintiffs. The thro. witnesses to the will, all swear positively that was perfe<,qy jn senses the day it was signed ; and *351 there is nothing to impeach, in the least, their credibility, excepting the evidence of Mr. and Mrs. Rivers, which is, no doubt, invalidated by the declarations they made to several persons, on the day the will was signed, that the testator was much better, and in his senses.
Powell, 81. S Tin. 125.
Powell, 90.
«id. 712.
*351 The cause was then submitted to the jury, who found a verdict for the plaintiffs, with a shilling damages, so as to establish the will.